IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER STRAME, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 2:12-cv-00205-SD |
| | : | |
| GC SERVICES LIMITED PARTNERSHIP, | : | |
| Defendant | : | JURY TRIAL DEMANDED |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**

Defendant GC Services Limited Partnership ("GC"), by and through its undersigned counsel, respectfully opposes Plaintiff's Motion to Compel Discovery Responses as the discovery requests exceed the scope of permissible discovery.\[1]

**BACKGROUND**

On January 17, 2012, Plaintiff filed a two count complaint against GC alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (Doc. 1). Specifically, Plaintiff claims that GC improperly communicated with third parties either attempting to collect the obligation from Plaintiff or locating Plaintiff when GC already knew Plaintiff's location. (Doc. 1 at ¶¶ 12-18). Plaintiff also alleges that GC called Plaintiff's cell phone using an automatic dialer without consent, thus violating the TCPA.

On May 25, 2012, GC served Plaintiff with its discovery responses, which included documents and recordings of telephone conversations pertaining to Plaintiff's account. GC, after an exhaustive review of Plaintiff's account, determined that at no time had Plaintiff's account been called with an automatic or predictive dialer. There is no evidence to the contrary in this

---

[1] /   Plaintiff and Defendant have resolved the issue pertaining to the deposition of Defendant's Rule 30(b)(6) witness.

{00555448;v1}

case.  GC also identified, but withheld, certain policy and procedures documents and its client contract due to the confidential nature of those documents.

## LEGAL ARGUMENT

### I.   GC IS ENTITLED TO A PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), parties have two primary means of seeking protective orders to bar the use of discovery with respect to certain documents.  The first method arises under Rule 26(b)(5)(A) and permits a party to protect privileged information that is otherwise discoverable.  Fed. R. Civ. P. 26(b)(5)(A).  The second method arises under Rule 26(c) and allows a party to obtain a protective order to prevent the disclosure of information.  Fed. R. Civ. P. 26(c)(1).  The court hearing such a motion may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Id. The rule lists several occurrences that qualify as "good cause," including causes "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(H).

The United states Court of Appeals for the Third Circuit has set forth a series of criterion for district courts considering a motion to protect "a trade secret or other confidential research, development, or commercial information from disclosure." See Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989).  Where "good cause" is demonstrated, courts will protect "[c]ommercial information such as marketing strategies and documents related to corporate structure." Metro Auto, Inc. v. American Honda Motor Co., Inc., 1995 U.S. Dist. LEXIS 4829, at *4 (E.D. Pa. April 13, 1995).  "Good cause" may be established upon a party's showing that "disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984); see also

Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not support a showing of "good cause." The burden of justifying the confidentiality of each document sought to be protected lies with the moving party.).

When determining if "good cause" exists for a protective order, the district court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure . . . cannot be compelled." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. Pa. 1994) (quoting Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv.L.Rev. 427, 432-33 (1991)). In Pansy, the Third Circuit highlighted several factors that a district court should consider it conducts its balancing test, including: "(1) the privacy interests of the party seeking protection;(2) whether the information is being sought for a legitimate purpose or for an improper purpose;(3) whether a party benefitting from the order of confidentiality is a private litigant or a public entity or official;(4) whether the case involves issues important to the public;(5) whether confidentiality is being sought over information important to public health and safety; and(6) whether the sharing of information among litigants would promote fairness and efficiency." 23 F.3d at 787-89.  The Third Circuit also noted in Pansy that "if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality."  23 F.3d at 788.

In Buzoiu v. Risk Mgmt. Alternatives, 2004 U.S. Dist. LEXIS 11838, at *2 (E.D. Pa. Apr. 5, 2004), the court granted a protective order pursuant to Rule 26(c) in an FDCPA class action suit.  Citing Pansy, the court granted a protective order to the defendant allowing the debt

{00555448;v1}

collector to protect a wide range of otherwise discoverable information.  Id.  First, the court ruled that the collector's "employee training materials" were entitled to protection because a competitor could easily photocopy the documents and use them in its own training program.  Id., at *4.  Second, the court also held that the collector's "notes on the consumer's account," a record of the collector's contacts with the consumer and efforts to collect her debt, were entitled to protection.  Id., at *8.  Although the notes were written in shorthand and could not be interpreted by the average reader, competitors who understood the collection business could use the documents to learn how the collector maintained notes of communications with its customers and debtors.  Id., at *9.

In Vidal v. Experian Info. Solutions, 2005 U.S. Dist. LEXIS 41853, at *2 (E.D. Pa. Feb. 4, 2005), the court granted a protective order to the defendant where documents it possessed "[contained] certain confidential codes that a competitor could use to reverse-engineer the design of Experian's System."  The court held that, even though an affiliate of the defendant possessed the confidential documents, the possibility of "a competitive disadvantage . . . if these documents were in the public domain," was sufficient reason to grant the defendant's motion.  Id, at *4.

Similarly, here, GC's training manuals, its employee practices and procedures and its documents related to how it operates its business are proprietary and uniquely geared to GC.  The debt collection industry is comprised of thousands of GC's competitors, for whom GC's information about how it operates its business, trains its employees and contracts with its clients would provide a competitive edge that could be gravely injurious to GC should that information be divulged.  GC's concern is not with Plaintiff, but, rather, with the potential dissemination of its business practices to the general public, and, more importantly, to its competitors.  Moreover,

releasing GC's contract with its client would give its competitors an opportunity to undercut GC's pricing structure and business relationship when such contract comes up for renewal.

Accordingly, the documents already identified by GC should only be required to be produced to Plaintiff pursuant to a suitable protective order that prohibits Plaintiff from using the documents in public filings without first obtaining leave of court, or otherwise circulating the documents to third parties unrelated to Plaintiff, Plaintiff's counsel and the professionals employed by Plaintiff's counsel in the prosecution of this case.

## II.     COMPLAINTS ON OTHER MATTERS ARE NOT ADMISSIBLE IN THIS CASE

Plaintiff impermissibly seeks discovery on, in essence, every complaint ever served against GC within the past five years for violations of the FDCPA and the TCPA.  Besides the ease for which Plaintiff could equally retrieve such public information on PACER or similar docket system (Fed. R. Civ. P. 33(d)), the demand for such documents is extremely burdensome and not designed to lead to the discovery of admissible evidence in this case.

Plaintiff's claims stand on their own.  Evidence of activity directed toward other consumers by GC is not admissible under 15 U.S.C. § 1692k(b)(1) to prove violations in this case.  In <u>Cusumano v. NRB, Inc.</u>, 1998 U.S. Dist. LEXIS 15418 (N.D. Ill. Sept. 22, 1998), the United States District Court for the Northern District of Illinois upheld the Magistrate Judge's finding that discovery of other complaints and "bad acts" is irrelevant to separate cases under the FDCPA.

> There is nothing in the clear language of the FDCPA which suggests that -- in an individual action, as opposed to a class action -- a court looks to a debt collector's practices regarding persons other than the plaintiff in determining the "frequency and persistence of noncompliance." Indeed, a number of courts have found, like the Magistrate Judge did here, that such information is irrelevant. <u>See</u>, <u>e.g.</u>, <u>Dewey v. Associated Collectors, Inc.</u>, 927 F. Supp. 1172, 1175 (W.D. Wis. 1996); <u>Byes v. Credit Bureau Enterps., Inc.</u>, 1995 U.S. Dist. LEXIS 13559 (E.D. La. Sept. 11, 1995).

Cusumano v. NRB, Inc., at *6-7 (N.D. Ill. Sept. 22, 1998).  See also Anderson v. Frederick J. Hanna & Associates, 361 F.Supp.2d 1379, 1384 (N.D. Ga. 2005) (declining to consider FDCPA violations unrelated to the present case); Powell v. Computer Credit, Inc., 975 F.Supp. 1034, 1039 (S.D. Ohio 1997), affirmed 1998 U.S. App. LEXIS 26797 ("By stating that a court in considering statutory damages in an individual FDCPA suit should consider 'the frequency and persistence of noncompliance by the debt collector,' Congress meant that the Court should consider the debt collector's noncompliance as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance"); Richard v. Oak Tree Group, Inc., 2008 U.S. Dist. LEXIS 95002, *20-21 (W.D. Mich. Nov. 21, 2008).

None of GC's conduct with respect to other consumers would be permitted to be introduced into evidence in weighing GC's "frequency and persistence of non-compliance" for the purposes of the FDCPA, nor could it be used to determine if GC "willfully" violated the TCPA.[2]  Accordingly, GC should not be compelled to produce documents in response to these requests by Plaintiff.

### III.     GC DID NOT USE AN AUTODIALER

Plaintiff's Document Request No. 24 is a fishing expedition with no possibility of leading to evidence refuting GC's assertion that it did not use an autodialer with respect to Plaintiff's account.  Plaintiff has been unable to explain how reviewing documents pertaining to GC's programming of its telephone systems and telephone database for making collection calls by way of an autodialer is going to show that Plaintiff's cell

---

[2] /     Again, besides the bald-faced assertions by Plaintiff in her Complaint, there is no evidence that GC even utilized an autodialer with respect to Plaintiff's account.  In fact, to the contrary, GC has asserted in sworn responses to discovery that such a device was not used by GC.

phone was called with an autodialer. GC has produced its collection notes, it has produced its dialer report and it has stated in sworn responses to interrogatories that it did not use an autodialer. GC's policy manuals and autodialer operating documents are not going to demonstrate otherwise. The request is simply designed to harass GC. The documents sought do not have the capacity to contradict GC's assertion in this case or to enable Plaintiff to "test Defendant's stated defense."

## CONCLUSION

For the foregoing reasons, Defendant GC Services Limited Partnership respectfully requests that Plaintiff's Motion to Compel be denied and that a protective order be entered.

Respectfully submitted,
FINEMAN KREKSTEIN & HARRIS, P.C.


By       /s/ Richard J. Perr
RICHARD J. PERR, ESQUIRE (PA 72883)
1735 Market Street, Suite 600
Philadelphia, PA  19103
(v) 215-893-9300; (f) 215-893-8739
e-mail: rperr@finemanlawfirm.com
Attorneys for Defendant

Dated:       June 20, 2012

{00555448;v1}

# CERTIFICATE OF SERVICE

      I, RICHARD J. PERR, ESQUIRE, hereby certify that on or about this date, I served a true and correct copy of the foregoing electronically, or by first class mail, postage prepaid, or telecopy on the following:

>Cary L. Flitter
>Andrew M. Milz
>Flitter Lorenz, P.C.
>450 North Narberth Avenue, Suite 101
>Narberth, PA  19072-1898
>(v) 610-266-7863; (f) 610-667-0552
>cflitter@consumerslaw.com; amilz@consumerslaw.com
>      Attorneys for Plaintiff

>      /S/ Richard J. Perr
>      RICHARD J. PERR, ESQUIRE

Dated: June 20, 2012

{00555448;v1}